STATE, Respondent, v. BROWN, Appellant.*

*October 2—October 27, 1964.*

* Motion for rehearing denied, without costs, on December 16, 1964.

414

For the appellant there was a brief and oral argument by *Walter J. Steininger* of Milwaukee.

For the respondent the cause was argued by *William A. Platz,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, and *William J. McCauley,* district attorney of Milwaukee county.

HALLOWS, J.   Two questions are raised: (1) Is sec. 161.02 (3), Stats., unconstitutional, and (2) is there sufficient credible evidence to sustain the conviction?

The defendant contends sec. 161.02 (3), Stats., makes the excessive or the habitual use of narcotics a crime, while in fact such use is a disease and the criminal sanctions amount to cruel and unusual punishment in violation of the state and federal constitutions. The defendant relies on *Robinson v. California* (1962), 370 U. S. 660, 82 Sup. Ct. 1417, 8 L. Ed. 758. After the printing of the defendant's brief, the same question was presented to this court and decided ad-

versely to the contentions of the defendant. See *Browne v. State* (1964), 24 Wis. (2d) 491, 129 N. W. (2d) 175, wherein it was held sec. 161.02 (3) was constitutional and did not make drug addiction as such a crime. We pointed out the section established three offenses: (1) The habitual use, (2) the excessive use, and (3) a use except pursuant to a prescription. The latter offense embraces a single instance of use.

The defendant argues there is not sufficient credible evidence to sustain a conviction for habitual or excessive use of a narcotic. That may be, but the argument is beside the point. He was not charged with either excessive or the habitual use of narcotics but was so charged and convicted of a use not pursuant to a prescription. While the evidence showed more than a single instance of use, it is not necessary to prove habitual or excessive use because the defendant was not so charged.

The defendant was arrested in Milwaukee on the night of June 26, 1962, by two detectives of the Milwaukee vice squad who were driving an unmarked car and observed him driving on the wrong side of the street. The defendant did not have a driver's license. After the arrest for this traffic violation the officers searched Brown's person but no hypodermic needles or other accessories used by dope addicts were found. A search of his auto produced two half-empty bottles of a narcotic cough syrup which can be purchased without a prescription. Brown was then taken to the vice-squad room of the Safety Building and was told to remove his clothing and was examined. It was found he had nine needle marks on his left forearm, three of which were fresh. He was again interrogated about his use of narcotics.

At the trial one of the arresting officers testified the defendant admitted he used heroin intravenously during May and June in Milwaukee, the last injection being on June 21, 1962, and had purchased during that time about eight $5

bags of heroin. Another detective by the name of Brown testified he interrogated the defendant the following morning and the defendant agreed to sign a confession which the detective typed up. The confession was signed by the defendant and witnessed by Detective Brown and his partner Detective Lang, now deceased. The written confession recites it was fairly and voluntarily given without any threats or promises and states substantially to what Detective Brown testified, namely, the use of heroin during the months of May and June, 1962, the last injection of heroin on June 21, 1962, in a room on North Eleventh street in the city of Milwaukee and the use of heroin by injection in the left arm by a needle and syringe.

The defendant on the stand admitted the use of heroin during the months of May and June but testified the injections took place only in Chicago, Illinois. He disputed the testimony of Detective Brown regarding the confession stating Brown did not type the confession and he did not sign it in the presence of either witness. The defendant claims he signed the confession because Officer Lang promised to get him released on a $1,000 bond if he did so and also because he did not want to lose his job by staying in jail as his father had cosigned some bills and he did not want his father to be obliged to pay them. The defendant also claims he was promised leniency if he co-operated with the police.

The confession was admitted in evidence without objection from the defendant or his attorney. After both parties rested, the trial court said the case involved "purely a matter of credibility" and the defendant's credibility was impeached by virtue of prior convictions. We cannot say the trial court was in error in believing the officers instead of the defendant.

But it is contended the written confession of the defendant was involuntary and obtained through coercion and promises and therefore a reversal is required on constitution-

al grounds. *Spano v. New York* (1959), 360 U. S. 315, 79 Sup. Ct. 1202, 3 L. Ed. (2d) 1265; *Haynes v. Washington* (1963), 373 U. S. 503, 83 Sup. Ct. 1336, 10 L. Ed. (2d) 513. The factual basis for this contention depends upon credibility. At the time of the admissibility of the confession no evidence had been put in by the defendant on the involuntariness of the confession. Such evidence as defendant did put in was after the confession was admitted and as part of his defense. It was in the nature of an explanation to destroy the probative value of the confession. In spite of the manner in which the evidence was adduced if the trial court believed the confession was involuntary or was obtained in violation of the defendant's constitutional rights, in making its finding, the court should have disregarded it and so ruled. However, the trial judge in finding the defendant guilty stated he considered the confession valid and thus resolved the issue. In our review of the record and consideration of this alleged constitutional error, we come to the same conclusion as the trial court did and find the confession was voluntarily given and the defendant's constitutional rights were not violated.

Finally, the defendant contends the court erred in admitting into evidence the two half-full bottles of cough medicine found by the police in their search of the car. This search by the vice-squad officers who were no doubt shadowing or trailing the defendant is not justified by virtue of the traffic violation. Such a search we pointed out was not justified in *Barnes v. State* (1964), ante, p. 116, 130 N. W. (2d) 264. Although the search was illegal the state did not offer the fruits thereof in evidence. It was the defendant who introduced these bottles in evidence and consequently he cannot now complain.

No point at the trial was made of the search of Brown's person at the time of arrest or of requiring him to disrobe at the police station but we have difficulty in perceiving how

the vice-squad detectives could discover needle marks on the left arm of a person unless they were searching for them. If the police removed the defendant's coat or his shirt in order to discover the needle marks without consent of the defendant, such action would constitute an illegal search of the person and would be subject to the rule of *Barnes*. What is in plain sight they may look at, what is hidden or covered is verboten.

*By the Court.*—Judgment affirmed.