STATE, Respondent, v. DAVIDSON, Appellant.

*No. State 52. Argued September 3, 1969.—Decided October 3, 1969.*
(Also reported in 170 N. W. 2d 755.)

180

For the appellant there were briefs by *Shellow, Shellow & Coffey* and *Robert H. Friebert,* all of Milwaukee, and oral argument by *Mr. Friebert.*

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *Roger P. Murphy,* district attorney of Waukesha county.

ROBERT W. HANSEN, J. The jury found the defendant guilty of murder in the first degree. The trial judge sentenced the defendant to life imprisonment. On this appeal the defendant raises a baker's half-dozen challenges to the judgment of conviction. All are carefully briefed and persuasively presented, but none require nor warrant a reversal of the judgment.

1. ADMISSION OF STATEMENT.

The defendant claims that the admission into evidence of defendant's statement, made after his request for counsel, was improper.

At the trial a *Goodchild*-type hearing was held to determine admissibility of defendant's statement to the sheriff and police chief as to when he had last seen his wife and where he had been the night before the killing. The court held that the answer to the sheriff's question, *i.e.*, "when did you last see your wife?" was not admissible, but that the comment of defendant as to where he had been the previous evening was a volunteered statement and admissible. The ruling separated and distinguished between the two parts of the statement. Both parts are linked in time and relevancy. Both parts are related to the whereabouts of the defendant on the night of the crime. Both became less than the truth when the defendant took the stand to testify that he had in fact been at the home of the deceased on the night of October 13th.

The state responds that the defendant had not been placed in custody or significantly detained so that the warning as to constitutional rights was not required at that stage of the proceedings. It is true that the investigation was just beginning and the defendant was not placed under arrest for nearly a month after the incident involved. However, by giving the warning or admonition as to defendant's constitutional rights, the police chief

apparently resolved the doubts as to custodial or detention status in favor of the warning being then given. A closer question, however, remains as to whether the statement made was a response to "questioning initiated by law enforcement officers." [1]

Here the police chief testified that he had informed the defendant that his wife was dead and that there were suspicious circumstances surrounding her death. He started explaining to the defendant his constitutional rights when the sheriff handed the chief a Miranda warning card which the chief read to the defendant. Asked if he understood, the defendant replied, "Yes." Asked if he cared to have an attorney, the defendant stated, "I think perhaps I better talk to my attorney." He added, "However, I have no objection to telling you when I last saw my wife." On this testimony the discussion as to when he last saw his wife clearly could be held to have been initiated by the defendant. He volunteered to give this information. The sheriff's inquiry as to when he last saw his wife was no more than an invitation to proceed. It was not an initiating of questioning. Holding the *Miranda* decision to its precise and expressed limits would make admissible both the defendant's statement that he had been with his wife the previous Monday and at the house the previous Tuesday, as well as his statement that he had been in Madison on Wednesday and Thursday at a business meeting. Both statements were part of a discussion initiated by him.

It is important to note that while the defendant objects to admission of the statement made by him to the chief, sheriff and assistant district attorney, he did not and does not object to the testimony of the police sergeant as to a nearly identical statement earlier made by the defend-

[1] *Miranda v. Arizona* (1966), 384 U. S. 436, 444, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694, defines custodial interrogation as ". . . questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

ant to the sergeant. The sergeant was the officer who first encountered the defendant when he reached the scene of the crime. The sergeant testified that the defendant then told him that he was in Madison on the night of the crime and that he had not seen his wife since the previous Monday. No objection was raised to the admission of this testimony by the police sergeant either at the time of the trial nor is objection raised on this appeal. Since the statement made by the defendant to the sergeant is as inconsistent with defendant's witness stand account of his whereabouts as is the statement made by him to the chief and sheriff, we have no hesitancy in holding that, if it was error to admit a portion of the statement made to the chief and sheriff, it was harmless error.

2. INTERVIEWING OF WITNESSES.

The defendant claims that the trial court improperly denied a mid-trial defense motion for the right to interview a particular state witness.

Early in the trial (after the jury had taken a view of the home where the defendant's wife was killed) the defendant's counsel moved that he be allowed to interview state witnesses, "both before and after they testify." The motion was denied, the judge adding that defense counsel would be permitted "to make appropriate motions as circumstances develop." That appropriate time in the judgment of defense counsel came after Dr. Robert Muggli testified for the state as an expert witness. His testimony linked the glass found in the defendant's automobile and apartment with glass found at the home of the deceased. After direct examination by the district attorney, cross-examination by defendant's counsel, redirect examination by the state, re-cross-examination by the defense, defendant's counsel moved the court for an order permitting him to interview Dr. Muggli. The doctor indicated he would prefer not to speak with de-

fendant's counsel but would if the court ordered him to do so.

Defendant cites a recent case [2] as supporting such mid-trial request to interview a state witness reluctant to be interviewed. That case termed it "well-settled law" in Wisconsin that:

"Accused and his counsel have the right to interview witnesses *before the trial;* and the state has no right to *deny them access* to a witness material to the defense, but a witness *cannot be compelled* to submit to such interview, . . ." [3]  (Emphasis supplied.)

The holding in *Watkins* is authority against, not for the position taken by defendant's counsel. We deal here with a motion to interview witnesses made after the trial got under way. We do not deal here with a pretrial denial of access to a witness. The witness involved had testified, and had been cross-examined and re-cross-examined by defendant's counsel. Full opportunity to ask any relevant and material questions had been given before the motion to interview the particular witness was made. Moreover, the witness involved stated that he preferred not to be interviewed by defendant's counsel, and would do so only if so ordered by the court. Under *Watkins* he is not to be compelled to submit to such interview. Absent pretrial action by counsel, the right to interview does not survive the start of the trial, particularly where the witness does not wish to be interviewed, and certainly where the request to interview a witness is made after he has testified and full opportunity to cross-examine has been given.

3. ADMISSION OF STATEMENT TO ATTORNEY.

The defendant claims that permitting introduction into evidence of a statement made by defendant to his attorney was error.

---

[2] *State v. Watkins* (1968), 40 Wis. 2d 398, 402, 162 N. W. 2d 48.
[3] *Id.* at page 402.

After identifying the corpse as that of his wife, defendant became ill. He was taken at his request to his doctor's office. While there, he asked the police officer to dial the telephone number of his attorney's office. The officer dialed the number, handed the phone to the defendant and the defendant said to his attorney, "Alvin, they found my wife. I don't want to talk about it until you are here."

In support of their position that such statement was inadmissible, appellant's counsel cite footnote 37 to the *Miranda* decision, stating: ". . . it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." [4]

We are not persuaded that this prohibition can be stretched to cover the situation here presented. His being taken to the doctor's office by the officers was no part of any investigatory or interrogation process. No questions were asked by anyone. Driving the defendant to his doctor's office at his request and driving him to the hospital at his doctor's request were no more than providing transportation exactly as a taxicab driver might have done. The statement made over the phone does not refer to defendant's earlier having ". . . stood mute or claimed his privilege in the face of accusation." By any test the statement to the attorney is a volunteered statement. It is no part of interrogation by law enforcement officers. It was not given in response to any question put by the police or prosecution. While we would prefer that the trial court had ruled the statement to the attorney inadmissible on the ground that it was immaterial, the objection to its admission was made on the ground that its introduction violated the *Miranda* mandate. We agree with the trial court that *Miranda* is not applicable.

[4] *Miranda v. Arizona, supra,* fn. 1, 384 U. S. at 468.

4. OBJECTIONS TO INSTRUCTIONS.

The defendant raises a number of objections to the instructions which were given and to the failure of the court to give certain other proposed instructions.

(a) The case of the prosecution being based on circumstantial evidence, the trial judge gave the Wisconsin standard instruction on circumstantial evidence. The following portion of the standard instruction is challenged by the defendant:

"These facts must be consistent with each other and with the guilt of the defendant. The circumstances must lead you to conclude beyond a reasonable doubt that the accused committed the offense.

"It is not sufficient that the facts simply render probable the guilt of the accused. No other conclusion but that of the guilt of the accused must fairly and reasonably grow out of the evidence." [5]

Defendant's objection to this instruction is that it makes no reference to possible innocence of the accused, implies that circumstantial evidence is relevant only to a consideration of guilt, and does not mention that, if the jury concluded that facts consistent with defendant's innocence are proved, defendant was entitled to an acquittal. Even if the specific portion of the instructions challenged is viewed in isolation, we find no basis for the objections. However, it is well settled that, in determining whether there has been any error in instructions to a jury, they must be considered as a whole. [6] So considered, it is clear that the trial judge made numerous references to the presumption of innocence and the burden of proof which the state carried. For example, the trial judge charged the jury:

"If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and find him not guilty."

---

[5] Wisconsin Standard Jury Instructions—Criminal, Part I, 170.
[6] *State v. Wrosch* (1952), 262 Wis. 104, 53 N. W. 2d 779.

This correctly states the Wisconsin law of circumstantial evidence,[7] and clearly states that the evidence is relevant to the issue of guilt or innocence, and that the jury has a duty to find the accused not guilty if there is any other reasonable hypothesis besides guilt.

(b) The trial judge in his instructions stated:

"To warrant a conviction on circumstantial evidence, facts necessary for the conclusion sought to be established must be proven by competent evidence beyond a reasonable doubt, as that phrase is defined for you in these instructions."

Defendant objects that this does not sufficiently warn that inferences are not to be drawn from inferences, but only from facts proven in the case. It is of course true that an inference as to the guilt of the defendant can be drawn only from facts which are proved beyond a reasonable doubt, and that each of the several circumstances upon which a conclusion of guilt necessarily depends must be thus proved beyond a reasonable doubt.

However, the judge also instructed the jury that:

"Circumstantial evidence is the proof of certain facts from which a jury may logically infer the existence of other facts according to the knowledge or common experience of mankind."

Considered together, these two excerpts from the instructions correctly and adequately express the rule in Wisconsin on the drawing of inferences by a jury.

(c) Defendant next claims as error the failure of the trial court to give a proposed instruction, the so-called "theory of the defense" instruction. On this point it is important to distinguish between the legal theory on which prosecution or defense relies and the factual evidence adduced in support of such theory. In the case before us, the proposed "theory of defense" instruction submitted by the defense appears to be a summarization

[7] *See State v. Johnson* (1960), 11 Wis. 2d 130, 104 N. W. 2d 379; *State v. Eberhardt* (1968), 40 Wis. 2d 175, 161 N. W. 2d 287.

of the evidence as the defense sees it. In fact, the defendant's counsel in their brief define a "theory of defense" instruction as ". . . the defendant's theory of the case is a recitation of the facts upon which he relies and the inferences which can reasonably be drawn from these facts." This commingles an explanation as to legal theory with comments on the evidence by the trial judge. The majority of cases cited by defendant on this point are from the federal system, where comments on the evidence may be made by the trial judge.[8] In Wisconsin, trial judges are not to thus comment on the evidence.[9] Such comment even in the form of a statement that these are the assertions of the defense, is not allowed in Wisconsin.

It is true that the legal theory of prosecution and defense is presented to juries in this state in general instructions, in the reading of the information, and in special defensive instructions such as those relating to self-defense, insanity, etc. It can be prejudicial error for a trial judge to fail to instruct on a special defense if the evidence raises that issue.[10] This relates to the legal theory, not a factual summary. In the instant case, the legal theory of the defense was adequately covered by the instructions. The defendant entered a general plea of not guilty, putting the state to its proof. The trial judge instructed the jury on the fact of such not guilty plea having been entered, the burden of proof resting upon the state, the presumption of innocence, the necessity of the state proving each element of the crime charged, and the duty of the jury to acquit if they did not believe and find him guilty beyond a reasonable doubt. This was adequate coverage of the legal theory of the case of the defendant.

[8] 8 Moore's, *Federal Practice, Rules of Criminal Procedure* sec. 30.09.

[9] *Jessner v. State* (1930), 202 Wis. 184, 231 N. W. 634.

[10] *See Stoughton v. Powers* (1953), 264 Wis. 582, 60 N. W. 2d 405.

5. CLOSING ARGUMENT.

The defendant claims prejudicial error in remarks made by the prosecutor in his closing argument to the jury.

(a) The prosecutor stated that the defendant needed money. The trial judge immediately told the jury to disregard the statement since there was no evidence to that effect in the record, gave the defense extra time for surrebuttal on this point, gave a specific instruction in the formal charge telling the jury to disregard the remark. These were adequate corrective measures.

(b) The prosecutor stated that the deceased was afraid of the defendant. Defense counsel interrupted and said there was no foundation for that remark, and moved "for a new trial." The district attorney pointed out that the victim had had the locks changed on her house and had fled from the home on one occasion when the defendant had unexpectedly appeared in it. The trial judge denied the motion for a new trial, specifically advising the jury the statement by the prosecutor with regard to there being testimony as to the attitude of the deceased is not a part of the record, but that there is ". . . evidence offered in this record relating to her activities and you may draw such inferences from those activities as you deem appropriate." The trial court comment correctly summarized the record, and the responsibility of the jury in regard thereto.

(c) The prosecutor referred to the defendant, Robert Davidson, as "Robert Kramer." This apparently was a slip of the tongue. The trial judge had failed to notice the inaccurate reference to the defendant when it was made, and, when objection to it was made at the conclusion of the argument, decided not to call further attention to it. The trial court ruled the slip did not constitute error "particularly with the alert jury we have" and elected not to emphasize the remark by repeating it and calling it to the jury's attention. We do not

quarrel with his judgment, particularly when no objection was made to the remark when it was made.

A motion for mistrial is addressed to the sound discretion of the trial court. This court will not reverse unless there has been a clear abuse of discretion.[11] We find no abuse of discretion here.

6. SEARCHES AND SEIZURES.

The defendant objects to certain evidence introduced on the grounds that such evidence was a result of an unreasonable search and seizure and therefore inadmissible.

(a) *October 14th Search of House.* When the police were summoned to the scene of the crime, they immediately observed blood on the outside of the home and a broken window in the door. It was reasonable for them to conclude that a serious crime had been committed. It was equally reasonable for them to conclude that the perpetrator of the crime was lurking or hiding in the house. It was equally reasonable to presume that the person whose blood was on the door was inside and in need of emergency medical treatment. They had the responsibility, as well as the right, as law enforcement officers to enter the premises and were not required to seek and secure a search warrant before so doing. When they discovered the corpse in the basement, they also sighted a large amount of blood, a large amount of broken glass and a pair of eyeglasses. It is doubtful whether the observations of the officers under these circumstances constitutes a search at all.[12] If they do, the search was not

---

[11] *Oseman v. State* (1966), 32 Wis. 2d 523, 145 N. W. 2d 766.

[12] "'A search implies a prying into hidden places for that which is concealed.' It is not a search to observe what is in plain view. Even though visual surveillance of things within plain view may be regarded as a search the real issue to be settled is whether or not such activities are regarded as an unreasonable search as circumscribed by either the fourth amendment of the United States constitution or art. I, sec. 11 of the Wisconsin constitution." *Edwards v. State* (1968), 38 Wis. 2d 332, 338, 156 N. W. 2d 397.

unreasonable. It is established law that ". . . objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." [13]

(b) *Search of Grounds.* All of the objects found and introduced into evidence as a result of the October 15th search (conducted without a search warrant) to wit: pine needles and tree limbs; and some of the items introduced as a result of the October 14th search, to wit: defendant's eyeglasses, were discovered outside the house, about ten feet from the garage. The privilege against unreasonable searches does not extend to the grounds around a house. The United States Supreme Court has held that the privilege does not apply to "open fields." [14] Neither does it apply to the lawn around a house. The rule is:

"It is well settled, however, that a trespass upon the grounds surrounding a building does not constitute an illegal search. The protection of the fourth amendment does not extend to the grounds." [15]

Under Wisconsin as well as federal law the objects seized outside the home on the grounds are not protected by the constitutional provision against unreasonable searches and seizures.

(c) *October 17th Search of House.* The search of the house on October 17th without a search warrant appears constitutionally tainted. There is presented no compelling reason for the police to return to the home without a search warrant. It would appear that a search warrant should have been procured before this re-entry. The

[13] *Harris v. United States* (1968), 390 U. S. 234, 236, 88 Sup. Ct. 992, 19 L. Ed. 2d 1067.

[14] *Hester v. United States* (1924), 265 U. S. 57, 44 Sup. Ct. 445, 68 L. Ed. 898.

[15] *Monnette v. United States* (5th Cir. 1962), 299 Fed. 2d 847, 850. For effect of federal court decisions in this area on Wisconsin law *see Barnes v. State* (1964), 25 Wis. 2d 116, 130 N. W. 2d 264.

evidence secured as a product of this search was four blood samples. Since the police had obtained a large number of blood samples during their investigation of October 14th, this evidence was merely cumulative. Where an illegal search produces evidence which is merely cumulative, the admission into evidence of such cumulative evidence is not necessarily prejudicial error.[16] We hold it not prejudicial error here.

(d) *October 14th Search of Auto.* Pursuant to a search warrant, issued on October 14th, the police inspected the automobile of the defendant and seized a horn rim with what appeared to be a bloodstain on it, a pair of rubbers, sweepings from the floor of the car and other items. The horn rim and glass particles were introduced into evidence at the trial. Defendant contends that there was not probable cause to issue such warrant. The warrant was issued on the personal observation of the affiant, plus statements made by a "next door neighbor." This was sufficient to justify the issuance of the search warrant. The finding of probable cause was warranted by the facts presented to the magistrate. The personal observations of the officer-affiant and the identification of the informant as a "next door neighbor" meet the test.[17]

---

[16] *Hemmis v. State* (1964), 24 Wis. 2d 346, 129 N. W. 2d 209.

[17] "Before issuing a search warrant, a magistrate must satisfy himself that the affidavit meets the test of *Aguilar v. Texas.* . . . This test has two aspects: (1) whether the informant is in fact reliable, and (2) whether the 'underlying circumstances' as to how the informant came by his information demonstrate sufficient probability of credibility to allow the search of the premises in question.

"This two-pronged test must be weighed with the added analysis of *Spinelli v. United States.* . . . When the affidavit is based upon the hearsay of an informant, the statement as to reliability of the informant must include as well the affiant's 'reason in support of this conclusion.' The additional significance we glean from *Spinelli* is that the magistrate must assure himself that the affidavit is not merely based upon 'casual rumor circulating in the underworld or

Defendant further contends that this search warrant was not particular enough in its statement of the thing to be seized, or, if it was, the execution was invalid. While the warrant directed that the automobile itself be "taken into custody," it is clear that the search was directed at what the auto contained. The warrant described a horn rim, a pair of rubber shoes and other instruments therein contained. This is not a situation where the description of objects to be searched for is so vague as to leave the decision as to what is to be seized completely in the discretion of the searchers. The warrant is sufficiently particular, and the objections to it on the ground of lack of particularity and improper execution fail.

(e) *October 15, 1966 Search of Apartment.* On the basis of an affidavit by a police officer, a search warrant was issued which directed the sheriff to search the apartment in which the defendant lived and to seize all ". . . clothing, particles of broken glass, blood spots or stains, pine needles, shoes, household furnishings, kitchen utensils, candlestick holders, articles of jewelry, tools." The warrant was executed and various pieces of broken glass were found and presented as evidence in the trial. Once again, defendant challenges the warrant as (1) not based on probable cause; and (2) not particular enough. There clearly were enough facts presented to the magistrate to enable him to find probable cause, and the warrant most certainly did not err on the side of lack of particularity as to objects to be seized. The item introduced as evidence, *i.e.,* "particles of broken glass," is specifically set forth as an object of the search in the warrant.

(f) *Standing to Challenge.* Having found no prejudicial error in the admission into evidence of objects

an accusation based merely on an individual's general reputation.'" *McCreary v. Sigler* (8th Cir. 1969), 406 Fed. 2d 1264, 1268, analyzing *Aguilar v. Texas* (1964), 378 U. S. 108, 84 Sup. Ct. 1509, 12 L. Ed. 2d 723, and *Spinelli v. United States* (1969), 393 U. S. 410, 89 Sup. Ct. 584, 21 L. Ed. 2d 637.

seized in the searches of the home, we need not rely, as did the trial judge, on the position that the defendant lacked the standing to object to the searches. At the time of the discovery of the deceased's body, the house was owned in joint tenancy by the defendant and his wife. Thus her death had the legal effect of severing the joint tenancy and the defendant became the sole owner thereof. What complicates the situation is that at the time of her death, not only were the parties living separate and apart, but there was pending an action for annulment of the marriage brought by the wife. Pursuant to a valid court order in the annulment action, the defendant had been barred from living in the house. This takes the case beyond those dealing with an absence of possessory interest, to the situation where any claim of possessory interest is suspended or negated by a valid court order and any prerequisites of proprietary interest are, by the same order, specifically if temporarily suspended. While the court order ordering him out of and to stay away from the home was in effect, does it remain his house or home so as to entitle him to object to an otherwise lawful search of the house? The question is close, but we would think not. Did the death of the wife, however, end the action for annulment or cancel the order banning him from entering the house or both. If he had been ordered not to dispose of household furniture, could the defendant, without moving the court to dismiss the action or set aside the order, hold an auction sale of such furniture? If he were ordered to hold until further order of the court a certain bank account or securities, could he, without having the order set aside, dispose of such assets? We would think that he would be required (to secure the restoration of the rights of ownership taken from him by the family court order) to have the court order suspending his possessory and proprietary rights in the property vacated. The death of a spouse in a divorce or annulment action does not obviate the procedural requirement

that the fact of death be established in the family court before dismissal of the action and vacation of pendente lite orders can be secured. We do not rest our ruling on the searches and seizures at this point but would hold that the death of a spouse entitles the survivor to seek and secure dismissal of a pending divorce or annulment action and the setting aside of temporary orders. However, particularly because in some cases the rights and interests of minor children may be involved and directly affected, we would hold that such result must be sought to be secured.[18] So we hold that it would have been appropriate for the defendant to move the family court to set aside the order suspending his possessory rights in the jointly held property. We do not want to leave with anyone the idea that a pendente lite order in a divorce or annulment action can be violated or ignored by a litigant on the death of the spouse.

7. SUFFICIENCY OF EVIDENCE.

The defendant asserts that the evidence presented at the trial was insufficient to prove the defendant's guilt beyond a reasonable doubt.

It is true that the evidence against him was entirely circumstantial, but this court has said that circumstantial evidence can be as forceful as eyewitness testimony.[19] Circumstantial evidence definitely can form a rational basis for a conviction. The standard for reviewing a jury verdict in a criminal case, including verdicts based upon circumstantial evidence, is ". . . whether . . . the trier

---

[18] In *Davidson v. Davidson* (1967), 35 Wis. 2d 401, 151 N. W. 2d 53, this court held that the administrator of the wife's estate could not proceed with the annulment action in question. The holding that the action abated at the death of the wife does not deal with whether a motion to dismiss such action is to be made in the family court. The decision does not deal with the status of pendente lite orders issued in the annulment action and in effect at the time of the wife's death.

[19] *State v. Johnson, supra,* fn. 7, at page 135.

of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true.

". . . Stating the rule conversely for the sake of clarity, the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' " [20]

By this test, the circumstantial evidence introduced at the trial in this case is adequate to support the verdict reached by the jury. At the very least, that evidence established that the defendant gave a false exculpatory statement when he first arrived at the house on the day when the body of his wife was discovered; that particles of glass found in the defendant's automobile and apartment came from the scene of the crime; that defendant's hands were scratched when he was seen after the time of the killing of his wife; that the eyeglasses of the defendant, blood-specked, were found outside the house where the murder was committed; that blood found in defendant's automobile was the same type as that found at the scene of the crime; that the defendant admitted being at the home of the victim on the night previous to the discovery of the body; that the defendant and his wife were having marital problems, and that an annulment action, initiated by her was pending. The defendant seeks an independent review by this court of the evidence submitted, but it is not the function of a reviewing court to substitute its judgment for that of the trier of fact. It is enough for this court to determine whether the evidence which the jury had a right to believe and accept as true was sufficient to convince it, acting

[20] *Lock v. State* (1966), 31 Wis. 2d 110, 114, 115, 142 N. W. 2d 183.

reasonably, to the required degree of certitude. We find the evidence adequate for that purpose and by that test.

We conclude that the defendant was found guilty of murder in the first degree by a jury of his peers on circumstantial evidence sufficient to support that verdict. He was sentenced by the trial judge, following a fairly conducted trial in which all rights of the defendant were respected and protected.

*By the Court.*—Judgment affirmed.