STATE, Respondent, v. BELL, Appellant.

*No. State 84. Submitted under sec. (Rule) 251.54 January 4, 1974.—Decided February 25, 1974.*
(Also reported in 215 N. W. 2d 535.)

The cause was submitted for the appellant on the brief of *Howard B. Eisenberg*, state public defender, and *Garrett N. Kavanagh*, assistant state public defender, and for the respondent on the brief of *Robert W. Warren*, attorney general, and *Michael R. Klos*, assistant attorney general.

HALLOWS, C. J.    On January 14, 1972, seven days after his arraignment, Bell filed a document entitled "Affidavit of Prejudice," in which he moved the trial judge to disqualify himself for prejudice and for another judge to be assigned to hear the case. The form of this request was in the tradition of the old practice, since supplanted by sec. 971.20, Stats.[1]   At the hearing on the

---

[1] "971.20 **Substitution of judge.** (1) The defendant may file with the clerk a written request for a substitution of a new judge for the judge assigned to the trial of that case. Such request shall

motion, the trial court treated the request as being governed by sec. 971.20 and denied it because it was not timely filed because the section requires that the request for a substitution of a judge be made "before making any motion or before arraignment." Permission was given to Bell to file his request in the form required by sec. 971.20 "in place of the original one." When this had been done, the court denied the second request for substitution of judge because not timely filed. The trial court was correct in denying the request on the ground it was not timely filed. *State v. Beaty* (1973), 57 Wis. 2d 531, 542, 205 N. W. 2d 11; *State v. Garner* (1972), 54 Wis. 2d 100, 102, 103, 194 N. W. 2d 649; *State v. White* (1972), 53 Wis. 2d 549, 553, 554, 193 N. W. 2d 36.

Bell now argues he should have been afforded a hearing on his allegation that the trial judge was prejudiced. The original document filed contained no facts but merely the conclusion that the defendant "has good reason to and does believe that he cannot have a fair trial on account of the prejudice of [the trial judge]." There was no suggestion that a hearing on prejudice might be necessary or that any proof on the subject of prejudice might be forthcoming. Such a document can hardly be the basis for a hearing on the prejudice in fact of the trial judge. In a letter to the trial judge, Bell made it clear he expected the trial judge to desist hearing the case without any in-fact hearing on prejudice. This contention is without merit.

Of course, every person charged with crime is entitled to a fair trial, which concept includes the right to be tried by an impartial and unbiased judge. This right was put on a constitutional basis in *State ex rel. Mitchell v. Bowman* (1972), 54 Wis. 2d 5, 6, 194 N. W. 2d 297, where it was stated that "under the constitution no

be signed by the defendant personally and shall be made before making any motion or before arraignment."

person, whether a juvenile or an adult, should be tried by a judge if the person involved can prove that the judge is prejudiced against him." The exercise of the right is subject to reasonable limitations in view of the overall function of the courts to efficiently administer justice. There must be a reasonable time limit within which the right must be exercised if there is to be an orderly procedure for the trying of criminal cases. Waiting until the day of trial to assert the right is an unreasonable tactic of defense counsel to delay the trial. Court calendars must have stability. The even flow of court work should not be interrupted by delayed requests for substitution of judge. It was to obviate such problem and to balance the right to a fair trial with the efficient administration of court calendaring that sec. 971.20, Stats., was enacted. This section did two things: (1) Eliminated any necessity for the defendant to actually prove prejudice by the judge by allowing the defendant a substituted judge without stating any reason; and (2) required the request to be made before any motion or before arraignment.

Bell let this time slip by, filed an old-fashioned affidavit of prejudice, and then substituted a belated request under sec. 971.20, Stats. His argument, now, ignores the statute. Instead, he claims he has a constitutional right independent of the statutory right which he can exercise at any time before trial to command a factual hearing on the prejudice of the trial judge. The facts neither raise such an issue nor is there any merit to it because the statutory right for the substitution of the judge was available and unused. We do not agree it was the intent of the legislature in enacting sec. 971.20, Stats., to grant a defendant the right to prove prejudice of a trial judge. On the contrary, the intent of this section was that a defendant should not have to prove prejudice to obtain a new judge. We have this day in *Baldwin v. State,* ante, p. 521, 215 N. W. 2d 541, construed

"arraignment" as used in the statute, but this construction does not help Bell because he did not exercise his right within the time prescribed by the statute.

We do not find *Irvin v. Dowd* (1961), 366 U. S. 717, 81 Sup. Ct. 1639, 6 L. Ed. 2d 751, controlling. In *Irvin* the defendant attacked the constitutionality of an Indiana statute providing for only one change of venue. The court stated that after an attempt has actually been made to secure an impartial jury and such jury could not be obtained, it became the duty of the judiciary to provide the accused a public trial by an impartial jury even though to do so the court must grant a second change of venue and thus contravene the statute. Here, Bell ignored the statutory provision giving him the relief he now requests. This is not a case in which the application of the statute failed to meet constitutional demands.

The second issue raises the question of the scope and nature of the plain-view doctrine under which the police seized evidence without a search warrant. On December 26, 1971, between 11:15 and 11:30 p. m., the occupants of a bar in Fond du Lac observed a man entering the Badger Tire Company building through a window on the east side of the building. The Badger Tire Company was located some 200 to 220 feet west of the bar from which this observation was made, across a parking lot. The tavern patrons summoned the police who when they arrived noticed a window had been broken. They entered the building and discovered Bell hiding behind a tire. They also noticed the soda and candy machines had been pried open. Bell was taken to the police station. Detective Thome and Officer Mullenix, along with some witnesses of Bell's entry into the building, returned to the scene. Upon arriving there, Detective Thome ordered Officer Mullenix to go to Bell's home and notify Mrs. Bell that her husband had tried to reach her by telephone. Officer Mullenix went to the Bell home and advised Mrs. Bell that her husband had been arrested and had been taken to

the station where he was presently trying to get in touch with her. He asked her what kind of a car her husband was driving. She replied that he had a blue Chevrolet. Officer Mullenix returned to the Badger Tire Company building and in the adjacent parking lot observed a 1959 blue Chevrolet parked about 75 feet from the building. It was the only car on the lot except for a squad car and a truck which the officer knew belonged to the owner of Badger Tire. The police observed a motor-vehicle sticker on the windshield which purported to be a receipt, attesting to an application for license plates in the name of Kenneth R. Bell. Officer Mullenix shone his flashlight in the car and observed two snow tires, a case of soda, two flashlights, a stapler and tire hammer. The owner of Badger Tire was shown the items by flashlight inside the car and identified them as belonging to the company. Mullenix then opened the unlocked door of the auto and took the keys out of the ignition and opened the trunk of the car where four more tires were discovered. The car and its contents were then taken by the police to the station, which was approximately one and a half hours after Bell had been taken to the station, inventoried, and the items removed from the car and locked in the property room. No effort by the police was made to get a search warrant after the police identified the car as belonging to Bell.

On Bell's pretrial motion to suppress the evidence, the court denied the motion in respect to the items found on the back seat of the car on the basis of the plain-view doctrine but granted the motion in respect to the tires found in the locked trunk of the car.

The fourth amendment to the United States Constitution proscribes unreasonable searches and seizures. Recently the supreme court has stated that the ultimate standard set forth in the fourth amendment is reasonableness. *Cady v. Dombrowski* (1973), 413 U. S. 433, 93 Sup. Ct. 2523, 37 L. Ed. 2d 706. This court has con-

sistently adhered to the view that reasonableness is to be determined by the facts and circumstances presented in each case. *State v. Pires* (1972), 55 Wis. 2d 597, 201 N. W. 2d 153; *State v. Davidson* (1969), 44 Wis. 2d 177, 170 N. W. 2d 755; *Edwards v. State* (1968), 38 Wis. 2d 332, 156 N. W. 2d 397. The fundamental rule applicable to searches and seizures is that warrantless searches are per se unreasonable under the fourth amendment except under certain well-defined circumstances. *Johnson v. United States* (1948), 333 U. S. 10, 13, 14, 68 Sup. Ct. 367, 92 L. Ed. 436; *Coolidge v. New Hampshire* (1971), 403 U. S. 443, 454, 455, 91 Sup. Ct. 2022, 29 L. Ed. 2d 564. One of the exceptions to the warrant requirement is the plain-view doctrine, and this court has held that a seizure following a plain view is not the product of a search. *Day v. State* (1973), 61 Wis. 2d 236, 212 N. W. 2d 489; *State v. Taylor* (1973), 60 Wis. 2d 506, 210 N. W. 2d 873; *Soehle v. State* (1973), 60 Wis. 2d 72, 208 N. W. 2d 341; *Mears v. State* (1971), 52 Wis. 2d 435, 190 N. W. 2d 184; *Warrix v. State* (1971), 50 Wis. 2d 368, 184 N. W. 2d 189; *State v. Hebard* (1971), 50 Wis. 2d 408, 184 N. W. 2d 156; *Milburn v. State* (1971), 50 Wis. 2d 53, 183 N. W. 2d 70; *State v. Brown* (1964), 25 Wis. 2d 413, 418, 130 N. W. 2d 760; *Edwards v. State* (1968), 38 Wis. 2d 332, 156 N. W. 2d 397.

Bell argues the plain-view doctrine is not applicable because (1) "plain view" by itself is not adequate to justify a warrantless seizure of evidence, and (2) the discovery of evidence in plain view must be inadvertent and, consequently, the doctrine cannot be applied where the police were motivated by the need to secure evidence. This court has frequently stated the rule that objects falling within the plain view of an officer who has a right to be in the position to have the view are subject to valid seizure and may be introduced in evidence. *Day v. State, supra; State v. Taylor, supra; Soehle v. State, supra; Ball v. State* (1973), 57 Wis. 2d 653, 205 N. W.

2d 353; *State v. Pires, supra; Mears v. State, supra; Schill v. State* (1971), 50 Wis. 2d 473, 184 N. W. 2d 858; *State v. Hebard, supra; Warrix v. State, supra; Milburn v. State, supra; State v. Dombrowski* (1969), 44 Wis. 2d 486, 171 N. W. 2d 349; [2] *Edwards v. State, supra; State v. Brown, supra.*

In this case there is no question the police in their investigation had a right to be on the parking lot. The use of the flashlight does not make the view an exploratory investigation. *Warrix v. State, supra.* This court stated in reference to the using of a flashlight at night to look into the interior of a car: "A policeman may use a flashlight to bring into plain sight what natural light would have revealed if the 'look-see' had taken place in daylight."

Bell argues the discovery was not inadvertent because the police investigation following his arrest had clearly focused on his automobile. The plain-view doctrine has been applied in the situation where a police officer is not searching for evidence against the accused, but inadvertently comes across incriminating evidence. It has been said the police officer must have prior justification for an intrusion during which he inadvertently comes across evidence incriminating the accused and that the doctrine serves to supplement the prior justification. Such justification may be a warrant for the seizure of

---

[2] The warrantless seizure of evidence from the 1960 Dodge owned by Dombrowski was held valid as a seizure of items in plain view. *State v. Dombrowski, supra,* pages 498, 499. In *Dombrowski v. Cady* (7th Cir. 1972), 471 Fed. 2d 280, the court granted habeas corpus relief to Dombrowski and said that the seizure could not be justified on plain-view grounds because the discovery of the items in the car had not been inadvertent. In *Cady v. Dombrowski* (1973), 413 U. S. 433, 93 Sup. Ct. 2523, 37 L. Ed. 2d 706, the court reversed the Seventh Circuit's decision granting habeas relief but because of the disposition made of the case did not reach the question of whether the seizure of the items from the 1960 Dodge could be legitimatized on plain-view grounds.

another object, hot pursuit, search incidental to a lawful arrest, or some other legitimate reason for being present unconnected with the search against the accused. *Coolidge v. New Hampshire, supra.* "Inadvertent" in terms of the plain-view doctrine means among other things, that a discovery cannot be anticipated. The police cannot know in advance the existence and location of the evidence and intend to seize it. In such case, the police must get a warrant unless there are exigent circumstances.

Here, the police were continuing an investigation within an hour and a half of taking Bell into custody. If the search had been made without talking to Mrs. Bell, there would be no question but that the plain-view doctrine applied to legitimize the seizure of the items found in the car. Thus the narrow question is whether the police, knowing in advance the color and make of Bell's car, were prohibited from looking into it after determining it belonged to Bell. We do not think under these facts the search had proceeded to the point where it had focused on the car or it contents as evidence. It is true the search was not unconnected with or not directed at anyone other than the accused. But we hold that under the circumstances presented, where the police were present in the parking lot to investigate the crime, the police were not prohibited from making a search of the car after they identified it as belonging to Bell. We think the discovery of the items in the car was inadvertent within the meaning of that term as used in the plain-view doctrine.

Another element of the plain-view doctrine as an exception to the proscribed warrantless seizure is whether there existed any exigent circumstances. Since reasonableness is the foundation of the exigent-circumstance rule, it is unreasonable to require the police in the early stages of an investigation at night to wait until the follow-

ing morning to get a warrant to seize an unlocked car and its contents. It is true Bell was in custody and could not drive the car away, but the possibility of someone else stealing it or its contents justify the police search of it to determine whether it should be taken for safekeeping. The police are not required to post a guard all night until they can find a magistrate the next morning who will issue a warrant on the basis of the knowledge the police obtained by seeing what was in plain sight. We hold the trial court was not in error in admitting the evidence.

*By the Court.*—Order and judgment affirmed.