STATE, Appellant, v. ELAM, Respondent.

*No. State 180.   Argued May 5, 1975.—Decided June 3, 1975.*
(Also reported in 229 N. W. 2d 664.)

For the appellant there was a brief by *Victor A. Miller,* attorney general, and *Robert D. Martinson,* assistant attorney general; a reply brief by *Bronson C. La Follette,* attorney general, and *Thomas J. Balistreri,* assistant attorney general; and oral argument by *Mr. Balistreri.*

For the defendant there was a brief and oral argument by *Howard B. Eisenberg*, state public defender.

CONNOR T. HANSEN, J.   We affirm the order denying the motion of the defendant to suppress the evidence and reverse the order of the trial court suppressing the evidence.

The facts which give rise to this appeal stem from the arrest of Elam in Brown county on February 7, 1973, on a warrant issued by Milwaukee county on December 14, 1972, charging him with selling a controlled substance. On February 7, 1973, Detective Richard E. Rice and Lieutenant Milton Steeno of the Green Bay police department, acting upon reliable information furnished by the FBI and the Wisconsin department of justice, proceeded to an apartment building at 1151 Brosig Street in the city of Green Bay, Brown county, for the purpose of serving the Milwaukee arrest warrant on the defendant. The officers, announcing their identity and purpose, knocked on the door to the suspect's apartment for one-half hour with no response, saw a man's face in the apartment window and ultimately obtained a pass key and entered the premises.

The officers entered the living room of the apartment, announcing that they were police officers with a warrant for the arrest of the defendant. There is some conflict in the testimony of Detective Rice whether or not he checked in a closet in the living room for the defendant. The officers proceeded through the kitchen, to the bathroom, where, through a partially open door, they saw a female in the bedroom. Announcing their purpose, the officers entered the bedroom. Upon questioning, the female identified herself as Sally Maedke. Detective Rice testified that he inquired as to whether the defendant was present and Maedke replied in the negative. Maedke denied that the question was asked.

Detective Rice then observed that the bedroom closet door was ajar, opened the door and discovered the defendant with a gun at his side which the defendant dropped to the floor upon order. After the defendant was removed from the room with handcuffs on, Detective Rice entered the bedroom closet to retrieve the defendant's gun and observed a box on the closet floor containing what he believed to be marijuana.

After the defendant was removed from the premises, Detective Rice and others looked the apartment over. At one point, Detective Rice testified that this was done to insure that no additional people were hiding in the apartment. At the subsequent hearing for the motion to suppress, he stated that the additional search was to observe things that might be in plain view which would support obtaining a search warrant of the premises. In the process, Detective Rice observed in the doorway of the closet in the living room certain paraphernalia associated with the preparation and injection of narcotic drugs. Detective Rice testified that the door to the closet was partially ajar, about a foot, exposing the contents. At the search-warrant hearing, Rice testified that he opened the closet door to see if anyone was hiding. At the suppression hearing he stated that the paraphernalia was visible through the crack in the door and that he may have opened the door further only after observing the contents. Daniel J. Hughes and James Enzler, narcotic agents for the Wisconsin department of justice, who arrived at the scene after the defendant had been apprehended, testified that upon entering the living room the closet door was open and the paraphernalia was on the floor in front of the closet.

There was also some confusion concerning the number of times the police investigated the bathroom of the apartment. Detective Rice testified at the search-warrant hearing that he checked the bathroom after the

arrest and saw unmarked pill bottles in the open medicine cabinet. His purpose in entering the bathroom was stated to be to look in the shower stall for other persons. At the suppression hearing, Detective Rice testified that he checked the bathroom before the arrest. At that hearing, he did not state when he discovered the medicine cabinet.

It was undisputed that after the arrest, Maedke was asked for, but declined, permission to search the apartment.

Subsequent to the events described above, Detective Rice applied for and obtained a search warrant for the apartment on the day of the arrest, February 7, 1973. A search was made that afternoon. The articles seized were the subject of the motions to suppress and included various controlled substances and the associated instruments of preparation and injection found in the closets, the medicine cabinet, a suitcase and various other locations. The warrant was issued on the basis of the testimony of Detective Rice and Agents Enzler and Hughes as to what they observed at the time of and shortly after the arrest. After Elam was arrested in Brown county on the Milwaukee warrant, he was released to the Milwaukee authorities. He pled guilty to the Milwaukee charge and received a five-year sentence.

Meanwhile, he was charged with the instant offense by the Brown county authorities. Elam was returned to the Brown county authorities and made his initial appearance on that charge on December 11, 1973. The transcript of the February 7, 1973, search-warrant hearing was filed December 28, 1973. The information was filed February 8, 1974.

The following issues are dispositive of this appeal:

1. Did the trial court err in voiding the search warrant and suppressing the evidence seized for a failure of the state to file a transcript of the search-warrant proceedings within the time limit provided by sec. 968.17 (2), Stats.?

2. Did the trial court err in not suppressing the evidence for the reason that the facts establishing probable cause to issue the search warrant were the fruits of an illegal search?

*Filing of transcript.*

Sec. 968.17 (2), Stats., provides:

"(2) An affidavit or complaint made in support of the issuance of the warrant and the transcript of any testimony taken shall be filed with the clerk within 5 days after the date of the execution of any search warrant."

The transcript, which served as the basis for issuing the search warrant in this case, was not filed until December 28, 1973, more than ten months after the execution of the search warrant. The trial court found that the delay in filing the transcript did not prejudice the defendant but suppressed the evidence seized based solely on a technical violation of the statute. The finding of no prejudice was presumably based on the fact that the defendant, who was not returned to the control of the Brown county authorities until December 11, 1973, had ample time to study the transcript in preparation for a suppression motion as the defendant could not challenge the validity of the search warrant until after the filing of an information against him.[1] The information in this case was not filed until February 8, 1974.

On appeal, the defendant concedes that the trial court erred in suppressing the evidence for a technical violation of sec. 968.17 (2), Stats.

Sec. 968.22, Stats., provides:

[1] Sec. 971.31 (5) (b), Stats., provides:

"In felony actions, motions to suppress evidence . . . shall not be made at a preliminary examination and not until an information has been filed."

"968.22 **Effect of technical irregularities.** No evidence seized under a search warrant shall be suppressed because of technical irregularities not affecting the substantial rights of the defendant."

This statute, together with the finding of no prejudice to the defendant by the trial court, would dispose of the issue. This court in *State v. Meier* (1973), 60 Wis. 2d 452, 210 N. W. 2d 685, construing the requirement of sec. 968.17 (1), that a return of the warrant must be made within forty-eight hours of its execution, held that to be only a ministerial duty which did not affect the validity of the search absent prejudice to the defendant. The time for filing provided in sec. 968.17 (2) is no less a ministerial duty, a violation of which does not invalidate the search absent prejudice to the rights of the defendant. As the comment to sec. 968.17 (2) reveals, the primary purpose of that section is to make sure the material necessary to challenge the validity of the search is made available to the parties as soon as possible. Here the defendant's involvement with the Milwaukee authorities until shortly before the transcript of the warrant hearing was filed in the Brown county court effectively prevented him from utilizing the transcript even if it had been earlier filed. Moreover, the existence of almost six weeks within which to study the transcript after it had been filed but before the information was filed, obviated any possible prejudice to the defendant on account of the actions of the state where no claim has been made that the passage of time increased the difficulty of challenging the probable cause evidence.

*Search.*

The defendant challenges the legality of the method employed by the police in obtaining the facts upon which

the subsequent finding of probable cause was made to support the issuance of the search warrant.

The fourth amendment to the United States Constitution proscribes unreasonable searches and seizures. The ultimate standard of the fourth amendment is reasonableness. *State v. Bell* (1974), 62 Wis. 2d 534, 539, 215 N. W. 2d 535. Reasonableness is to be determined by the facts and circumstances of each case. *Chimel v. California* (1969), 395 U. S. 752, 765, 89 Sup. Ct. 2034, 23 L. Ed. 2d 685; *State v. Bell, supra,* pages 539, 540; *State v. Pires* (1972), 55 Wis. 2d 597, 201 N. W. 2d 153. In *Coolidge v. New Hampshire* (1971), 403 U. S. 443, 454, 455, 91 Sup. Ct. 2022, 29 L. Ed. 2d 564, the United States Supreme Court stated the governing fundamental principle:

"Thus the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' "

We are of the opinion that the doctrine of plain view as combined with exigent circumstances is applicable to this case.

The plain-view doctrine is not itself sufficient to justify a warrantless search and seizure. *Coolidge v. New Hampshire, supra,* pages 467, 468; *State v. Bell, supra,* page 540; *State v. Pires, supra,* page 607. Nor can the doctrine be used to circumvent the requirement of obtaining a warrant where the police know in advance that the object will be found in plain view if the intrusion can be accomplished. *Coolidge v. New Hampshire, supra,* page 470. Therefore, three prerequisites must be met to

invoke the doctrine. The police must have a prior justification for the intrusion which placed them in the position to observe the evidence in plain view, the evidence must be in plain view, and the discovery of the evidence must be inadvertent. *Coolidge v. New Hampshire, supra,* page 466; *State v. Bell, supra,* page 540; *Day v. State* (1973), 61 Wis. 2d 236, 248, 212 N. W. 2d 489.

The search warrant was issued on the basis of the articles found in the bathroom and the closets in the bedroom and living room. In reviewing the present case, we first consider the marijuana in the bedroom closet.

In the instance of the marijuana, it could not be meritoriously argued that the state unjustifiably maneuvered itself into a position to observe the evidence in plain view or that the discovery was anything but inadvertent. It is undisputed that the police legally gained initial entry into the apartment pursuant to the arrest warrant. The evidence was clear that Detective Rice entered the bedroom closet to retrieve the gun which the defendant had dropped to the floor when confronted by the police. The gun itself was within the plain-view doctrine and, therefore, subject to seizure. It was also undisputed in the record that the marijuana was found in plain view immediately adjacent to the weapon on the closet floor. The trial court so found. Nothing in the record gives the slightest indication that discovery of the marijuana was anticipated by the police.

The marijuana found in the bedroom closet was not the result of an unlawful search.

The defendant argues that the paraphernalia in the living room closet and the drugs in the medicine cabinet were found by the police pursuant to an illegal search and thus could not serve as the basis for the issuance of the subsequently obtained search warrant.

The defendant contends that the inspection of the apartment which resulted in the discovery of this chal-

lenged evidence cannot be justified as being a search incident to the arrest of the defendant. As we view the record, no one takes the position that this was a search incident to arrest. Thus the issue need not be further considered.

The defendant further contends that the discovery of the evidence challenged cannot be justified on the basis of the plain-view doctrine.

As earlier stated, the plain-view doctrine does not in itself supply the justification for intruding on the privacy of the individual concerned by conducting a warrantless search. In *State v. Pires, supra,* pages 605, 606, this court recognized that a search, "lawful at its inception, may become unlawful by broadening its intensity and scope unless further steps are taken that can independently satisfy constitutional requirements." In that case, this court held that a warrantless general evidentiary search of a bedroom, after it had been earlier determined that no one was present in the room, could not be sustained under the constitutional requirements. It was held that the police, having once checked the room to determine if anyone was present, were without justification to check it a second time, allegedly for the same reason, and had thus maneuvered themselves to achieve the plain view of the evidence there in question. *State v. Pires, supra,* page 608.

In the instant case, the defendant argues that the police, once the defendant had been arrested and removed from the premises, had no further justification for remaining in the apartment or for looking around such as to place themselves in a position to observe evidence in "plain view." *Cf. United States v. Davis* (5th Cir. 1970), 423 Fed. 2d 974, certiorari denied, 400 U. S. 836, 91 Sup. Ct. 74, 27 L. Ed. 2d 69. We do not agree.

It was undisputed in the record that the discovery of the paraphernalia in the living room closet and the

medicine cabinet was made after the defendant was removed. There may be some inconsistencies in some of the statements of Detective Rice; however, at the warrant hearing Detective Rice testified that the reason they looked the apartment over after arresting the defendant was to insure that no accomplice was present and in hiding. Further, at the suppression hearing, Detective Rice testified that prior to the arrest he had received information from the justice department that the defendant had one or two women and possibly two or three men with him in the apartment. The defendant had been described by the justice department information as armed and dangerous. The arrest warrant itself charged the defendant with trafficking in drugs. When the police actually entered the apartment with a pass key, and after knocking at the door for over one-half hour, they found at least one other person besides the defendant, and defendant was not only armed but had secreted himself in a closet.

Based on this and other evidence, the trial court found that the investigation of the apartment after the arrest and removal of the defendant was motivated by the desire to insure that no one else was hiding.

The findings of the trial court made with regard to orders for the suppression of evidence are subject to the great weight and clear preponderance standard of review. *State v. Pires, supra,* page 603. Based on the evidence presented, the finding of the trial court in this regard is not against the great weight and clear preponderance of the evidence.

The question remains, however, as to whether an investigation of the apartment to check for additional persons was a sufficient justification under the circumstances so as to fall within the exigent circumstances exception to the warrantless search rule.

The police had quickly walked through the apartment in search of the defendant before they found him hidden in the closet of the bedroom. They had earlier observed the defendant's face in the window of the bedroom. There is contradictory evidence as to whether the living room closet was checked on this initial sweep through the apartment. There was no evidence that a thorough search of the bathroom was initially made. Rice testified that as he entered the bathroom, he immediately noticed someone (Maedke) in the bedroom, and thus entered the bedroom in search of the defendant.

This evidence does not indicate that the initial sweep of the apartment reasonably excluded the possibility that persons other than Maedke and the defendant were hiding in the apartment. This, together with the information that the defendant was armed and dangerous and that he had possibly three to five other persons with him, constituted sufficient justification under the circumstances for a second inspection of the premises after the defendant's arrest. *United States v. Broomfield* (D. C. Mich. 1972), 336 Fed. Supp. 179.

There is further reason for the continued presence of the police in the apartment after the defendant had been removed. The defendant's girl friend, Maedke, was still present and unrestrained. *See: United States v. Manarite* (2d Cir. 1971), 448 Fed. 2d 583, 593. The police had found marijuana in the bedroom closet, easily accessible to Maedke, and had reason to believe that other controlled substances were present in the apartment. While Maedke was not then under arrest, the police had probable cause to arrest her and did later arrest her for obstructing an officer. These facts justify the continuation of the police presence, although they would not alone justify a renewed inspection of the premises outside the area of Maedke's immediate control as defined by the *Chimel Case. See, e.g., United States v. Manarite, supra.*

The defendant also contends that the record will not support the finding of the trial court that the paraphernalia in the living room closet and in the medicine cabinet were in plain view.

Detective Rice testified at the suppression hearing that the living room closet was ajar approximately a foot and that when he looked through the opening to see if someone was hiding therein, he saw the paraphernalia between the jambs of the door. Detective Rice said that he then opened the door to the closet the rest of the way. Detective Rice's earlier testimony at the warrant hearing would support the view that he opened the closet door before he discovered the evidence. Detective Rice was never asked and did not state whether he then moved the paraphernalia out of the closet, which, if the plain-view doctrine is applicable, he had every right to do as he would be justified in seizing the contraband. *State v. Bell, supra; Day v. State, supra; State v. Davidson* (1969), 44 Wis. 2d 177, 195, 170 N. W. 2d 755. Agents Hughes and Enzler testified at the warrant hearing that they entered the apartment after the defendant had been removed and saw the paraphernalia in front of the open closet door.

The inconsistencies between Detective Rice's testimony and that of Hughes and Enzler as to where the evidence was positioned created an issue of credibility for the trier of fact, and it cannot be said the trial court's finding that the paraphernalia was discovered in plain view is against the great weight and clear preponderance of the evidence. Regardless of whether Detective Rice first observed the paraphernalia and then opened the door further or first opened the door and then observed, he was justifiably in a position to view the evidence made apparent to him because he was looking in the closet for possible accomplices. Thus, the exigent circumstance's exception supplied the prior justification for Detective Rice to so

position himself, by opening the door, as to achieve the plain view. *United States v. Broomfield, supra.*

With regard to the medicine cabinet, it is contended by the defendant that Detective Rice had no possible justification for his investigation because a person could not hide therein. The record, however, discloses that Detective Rice entered the bathroom to check the shower stall and observed the contents of the medicine cabinet as he was leaving. There was no evidence that Detective Rice had to open the medicine cabinet to observe its contents. On the contrary, the trial court found that the contents of the cabinet were in plain sight. This finding was not against the great weight and clear preponderance of the evidence. *State v. Pires, supra.*

The conclusion we reach is that the order denying the defendant's motion to suppress the evidence because of an alleged unlawful search is affirmed. The order of the trial court suppressing the evidence for failure to file the transcript of the search-warrant testimony within the time provided by sec. 968.17 (2), Stats., is reversed. The cause is remanded for further proceedings.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.